## CAR SERVICE RULES.

[Circuit Court of Summit County.]

THE THOMAS PHILLIPS COMPANY v. THE ERIE RAILROAD COM-
PANY.

Decided, April, 1905.

*Railways—Reasonable Demurrage May be Charged for Detention of
Cars—Carrier May Refuse to Deliver Cars on Siding—Until De-
murrage in Arrears is Paid—What Constitutes a Defense in Law
—To a Suit to Compel Carrier to Deliver Cars on Private Siding
of Consignee.*

1. A common carrier may make a reasonable charge for demurrage
   upon the failure of the consignee to remove freight from its cars
   within a reasonable time.
2. A common carrier of freight is justified in refusing to deliver cars
   of freight upon the private siding of the consignee until he pays
   the demurrage charged for the unreasonable detention of former
   cars placed upon his siding.
3. In an action, by the consignee of freight to compel a common car-
   rier to deliver cars of freight upon his private siding, an answer
   alleging that the consignee positively refused to recognize certain
   rules imposing a reasonable charge for demurrage upon cars un-
   reasonably detained for unloading, and reserving the right to the
   carrier to refuse to deliver subsequent cars until all demurrage
   in arrears was paid, that consignee deliberately detained cars,
   thereby depriving the carrier of their use, in addition to refusing
   to pay reasonable demurrage charges, and denying his obligation
   to pay anything for the detention of the cars, states a defense
   entitling the carrier to a hearing upon the issues joined.

WINCH, J.; MARVIN, J., and HENRY, J., concur.

Appeal from the Court of Common Pleas of Summit County.

Plaintiff brought its action against the railroad company,
praying that the latter be ordered and directed to immediately
deliver upon the plaintiff's switch certain cars consigned to
plaintiff and laden with merchandise belonging to it, and that
the railroad company be further ordered and directed to receive
from certain other railroads and at once deliver upon said
switch such further cars consigned to plaintiff as might in
the future arrive, either upon such other railroads, or its own.

By an amended and supplemental petition, plaintiff asks damages alleged to have been occasioned by the railroad company's delay in delivering said described cars upon said switch.

The railroad company, by its amended answer, admits its refusal to set certain cars upon plaintiff's switch, which cars, it alleges, it placed upon a public side-track and notified plaintiff that they were there for its benefit. It then pleads certain car service rules as follows:

"Defendant further says that prior to October 1, 1902, in order to secure the speedy unloading and return of cars and to avoid detention thereof by shippers and consignees, it made and adopted, and through the Cleveland Car Service Association, of which it was and is a member, promulgated rules providing, among other things, that a charge of one dollar per day or fraction of a day would be made for delay to or storage in cars on all cars containing property shipped at car-load rates for any time beyond the so-called free time elapsing after such cars should be placed for unloading, and before the same should be unloaded, Sundays and legal holidays not being counted in the computation of the time elapsing, and the free time being ninety-six hours for cars containing coal and coke, and forty-eight hours for cars containing other commodities. By said rules it is also provided, in substance, that when cars are ordered to a private siding for unloading, and the party so ordering them is delinquent in the payment of car service charges, defendant's agent should decline to place cars on such private siding until such delinquency should be made good, and should thereupon notify the party using such private siding that his freight would be delivered or received only upon the defendant's public team track until such delinquency should be made good.

"Said rules were in force continually from a date prior to October 1, 1902, to and since the commencement of this action, and of them plaintiff, during such entire period, had full notice and knowledge, and defendant says that said rules and said charges are reasonable, and other railroad companies, and railroad companies generally, have adopted and enforced the same rules or rules of like character.

"Defendant further says that all the shipments mentioned in the petition herein, and ordinary shipments of goods to plaintiff, other than of coal and coke, have been made under contracts, evidenced by the bills of lading under which said shipments have been made and transported. By the contracts of shipment and bills of lading it has been provided that 'The

delivering carrier may make a reasonable charge per day for the detention of any car, and for use of track after the car has been held forty-eight hours for unloading, and may add such charge to all other charges hereunder, and hold said property subject to a lien therefor,' and further that 'owner or consignee shall pay freight, and all other charges accruing on said property before delivery.'

"Defendant further says that in its shipments from its line of road to said private track occupied and used by plaintiff, for some time prior to the date referred to in the petition, when said cars were detained, the plaintiff had detained and held for storage purposes many cars of the defendant delivered on said spur-track at plaintiff's plant, and during the month of November, 1902, plaintiff detained as aforesaid ten cars, an aggregate of ninety days over and above the free time allowed by the rule. During the month of December it detained six cars, an aggregate of thirty-nine days over and above the free time allowed by the rule. During the month of January, it detained eleven cars an aggregate of ninety-four days over and above the free time allowed by the rule. That the reasonable service charges for November were $90; for the month of December were $39; for the month of January $94, and although defendant had often requested plaintiff to pay said car charges, it had positively refused to pay the same or any part thereof.

"The defendant further says that in addition to the detention of said cars above recited, for a long time, to-wit, more than two years prior to the commencement of this suit, that it positively refused to recognize the rules of the defendant with reference to the storage of the cars as above recited, but has deliberately and purposely detained cars, depriving the defendant of their use, and plaintiff in addition has refused to pay to the defendant the reasonable value of the said detention of cars, has denied and denies its liability and obligation to pay anything to the defendant for detention of cars.

"Defendant says that because of plaintiff's refusal to recognize said rules, and to pay any car service charges, it, on or about January 16, 1903, served due notice upon plaintiff that it would deliver no more freight upon said plaintiff's private track after January 21, 1903, until said car service charges for November, 1902, were paid, and on January 26, 1903, further notified plaintiff that it would not resume deliveries upon said private track till said car service charges for December, 1902, were also paid; and said car service charges not being paid, defendant refused to deliver upon said private siding said three cars mentioned in the petition, but it placed them upon its regu-

lar public team track for plaintiff to unload, and at and up to the time of beginning this suit, plaintiff was free to unload them there, except that as to said car No. 80115 the free time after such placing elapsed before this suit was begun, and car service charges accrued thereon, whereupon this defendant, through the medium of said car service association, caused said car to be locked so that it should not be unloaded till such charges accruing thereon should be paid and its lien therefor extinguished by such payment."

A demurrer filed to this amended answer raises the question of the reasonableness of the car service rules pleaded, and the right of the railroad company to enforce them.

That forty-eight hours is a reasonable time within which a consignee should be required to remove freight from cars and that the railroad company might make a reasonable charge for demurrage upon failure to remove the freight within said time, was held by this court in the case of The N. Y. L. E. & W. R. R. Co. v. The J. T. Seiberling & Co., at the October Term, 1894, in this county.

In this case we have the additional question whether, upon the refusal of the consignee to pay demurrage already accrued, the railroad company can refuse to deliver other cars thereafter arriving.

We think both the rules were adopted by the railroad company for the one purpose alleged in the amended answer: "in order to secure the speedy unloading and return of cars and to avoid detention thereof by shippers and consignees," and not that the second rule was adopted for the purpose of enforcing the payment of demurrage already accrued. That such rule is reasonable and necessary for the proper operation of defendant's railroad is alleged in the answer as follows: "Defendant says that in the operation of its railroad it is required to use a large number of cars of various kinds to haul and carry the great volume of freight which is offered to it for transportation as a common carrier; and by reason of the transportation of through freight, that is, freight originating at points beyond defendant's railway, for delivery at points on its railway, large numbers of cars owned by other railroads are offered to the defendant for transportation, and hauled by it over its railroad

to point of destination or for delivery to connecting carriers. That the proper operation of its railway requires that it return to the owners or to the other carriers, as soon as reasonably possible, all foreign cars coming on its lines.  That for many months prior to the commencement of this suit, the volume of freight transported over defendant's railroad, and over the roads of other carriers, had been unprecedently large, and that the proper handling of its freight and the discharge of its duties as a common carrier make it necessary that consignees of freight unload cars with all reasonable dispatch, and without unnecessary delay, that shippers and consignees do not unnecessarily detain the defendant's cars.''

The further allegation that plaintiff positively refused to recognize these rules and deliberately and purposely detained cars, depriving defendant of their use, in addition to refusing to pay reasonable demurrage charges, denying its obligation to pay anything for the detention of cars, we think makes a defense in law entitling the defendant to a hearing upon the issues thus joined.

The demurrer is, therefore, overruled.

*Grant & Sieber*, for plaintiff.

*Tibbals & Frank*, for defendant.